

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Hon. D. C. Greer
State Highway Engineer
Austin, Texas

Dear Sir:

Opinion No. O-7481

Re: Issuance of Certificates of
Title in cases where the
ownership of a motor vehicle
has been transferred by
operation of law, particu-
larly upon inheritance, devise
or bequest.

By your letter of October 28, 1946, you submitted to this department, request for opinion on four questions concerning the proper construction to be placed on the Certificate of Title Act, Art. 1436-1, Vernon's Annotated Penal Code of Texas. Your questions will be answered in the order in which you have presented same.

Question 1. "Where a deceased person held a certificate of title to a motor vehicle, are we correct in issuing a new certificate of title upon receipt of a proper application from a purchaser supported by, in cases where the Estate has been probated, either the certificate of title properly assigned by the Executor or Administrator of the Estate, or if the outstanding title cannot be located, an application for title in the name of the Estate properly executed by the Executor or Administrator and in either case Letters Testamentary or Letters of Administration? (By way of explanation we might state that the application for title in the name of the Estate would be properly assigned to the applicant for title and that this is in conformance with a policy adopted by this Department wherein we recognize and accept applications for title which are properly executed and assigned the same as we would accept an assigned certificate of title.)

Hon. D. C. Greer - Page 2

"In cases where there has been no administration, and none is necessary, are we correct in accepting a properly executed application by the new owner supported by an Affidavit of Heirship signed by all of the heirs and specifying that they desire title placed in the applicants name? (It is understood that in any case if there is a lien recorded on the outstanding title a release of such lien must accompany the papers.)"

This question is in two parts, the first of which inquires whether or not you are correct in issuing a new certificate of title upon receipt of a proper application from a purchaser, supported by either a certificate of title properly assigned by the Executor or Administrator of the Estate or if the outstanding certificate of title in the name of the deceased cannot be located, an application for title in the name of the Estate properly executed by the Executor and assigned to the purchaser. In each of the above cases, it is understood that the application is supported by either Letters Testamentary or Letters of Administration, properly issued to the Executor or Administrator of the Estate as the case may be.

Section 33 of the Certificate of Title Act provides as follows:

"Whenever the ownership of a motor vehicle registered or licensed within this State is transferred by operation of law, as upon inheritance, devise or bequest, bankruptcy, receivership, judicial sale, or any other involuntary divestiture of ownership, the department shall issue a new certificate of title upon being provided with certified copy of the probate proceedings,
* * * ."

We believe that this provision of the Certificate of Title Act answers your question in itself and that the procedure outlined above in issuing title under these circumstances is correct.

The second part of your question, as we interpret it, inquires as to whether or not you would be authorized in issuing certificate of title on an application supported by an Affidavit of Heirship signed by all of the heirs and specifying that they desire title placed in the applicants name in cases where there has been no Administration and none is necessary.

We assume that in the situation outlined in your question, the record title to the automobile stands in the name of the deceased

Hon. D. O. Greer - Page 3

person.

Section 55 of the Certificate of Title Act reads as follows:

"Section 55. Whenever the ownership of a motor vehicle registered or licensed within this State is transferred by operation of law, as upon inheritance, devise or bequest, bankruptcy, receivership, judicial sale, or any other involuntary divestiture of ownership, the department shall issue a new certificate of title upon being provided with certified copy of the probate proceedings, if any (if no administration is necessary, then upon affidavit showing such fact and all of the heirs at law and specifications by the heirs in whose name the certificate shall issue), * * *" (Emphasis ours)

We believe that the portion of Section 55 of the Certificate of Title Act above quoted, and particularly that portion in parenthesis and underlined, expressly answers the question propounded and the procedure now being followed by your department is correct and authorized by this provision of the Certificate of Title Act.

Question 2. "Would we be correct in accepting the papers listed in Question 1, where there is no record of title on the motor vehicle supposedly owned by the deceased person, or should we demand that a proper chain of title be brought up to the deceased person by going back to the owner as of Oct. 1, 1939, or if the motor vehicle is a 1939 model or later, by securing the manufacturer's certificate and in either case demand proper assignment of title to subsequent owners until title is brought up to the deceased person? (In some cases the surviving heir, or heirs, cannot trace all former owners of the motor vehicle.)"

Section 1 of the Certificate of Title Act reads as follows:

"Sec. 1. This Act shall be referred to, cited, and known as the 'Certificate of Title Act', and in the enactment hereof, it is hereby declared to be the Legislative intent and public policy of this State to lessen and prevent the theft of motor vehicles and the importation into this State of, and traffic in, stolen motor vehicles, and the sale of encumbered motor vehicles without the enforced disclosure to the purchaser of any and all liens for which any such motor vehicle stands as security, and the provisions hereof, singularly and collectively, are to be liberally construed to that end. * * *" (Emphasis ours)

Hon. D. C. Greer - Page 4

A reading of this provision of the Certificate of Title Act clearly establishes that the intent of the Legislature in passing such Act was to create a method by which the subsequent sale of a stolen motor vehicle or the sale of an encumbered motor vehicle without the disclosure to the purchaser of such lien, could be prevented and that it was the intent of the Legislature that there should be kept a continuous record title by the Certificate of Title Division of the Highway Department on all motor vehicles operating on the public highways of Texas. This intent is evidenced by Section 27 of the Act which provides that before selling or disposing of any motor vehicle required to be registered or licensed in this State, that the owner thereof shall make application to the designated agent in the County of his domicile upon a form to be prescribed by the department for a Certificate of Title for such motor vehicle; and Section 28 which provides that no designated agent shall issue a receipt for application for Certificate of Title to any new motor vehicle without having first been furnished with a manufacturer's certificate properly assigned by the manufacturer, distributor or dealer; and Section 29 which provides that no such designated agent shall issue a receipt for certificate of title to any used motor vehicle imported into this State for the purpose of sale without first requiring the delivery to him by the applicant of an importer's certificate properly assigned by the importer; and Section 30, which provides that before any motor vehicle brought into this State by any person other than a manufacturer or importer, and which is required to be registered or licensed in this State, can be bargained, sold, transferred or delivered with intent to pass any interest therein, application must first be made to the designated agent of the county wherein the transaction is to take place for a certificate of title, and further providing that the designated agent shall not issue a receipt until and unless the applicant shall deliver to him such evidence of title as shall satisfy the designated agent that the applicant is the owner of such motor vehicle and that same is free of liens except those which may be disclosed in the application.

These four sections of the Act cover all contingencies under which a motor vehicle could be the object of a first sale in Texas, and it is clearly the intent of these provisions that no title shall pass until a certificate of title has first been issued by the department.

Section 33 of the Certificate of Title Act reads as follows:

"No motor vehicle may be disposed of at subsequent sale unless the owner designated in the certificate of title shall transfer the certificate of title on form to be prescribed by the Department before a Notary Public,

Hon. D. C. Greer - Page 5

which form shall include, among such other matters as
the Department may determine, an affidavit to the
effect that the signer is the owner of the motor ve-
hicle, and that there are no liens against such motor
vehicle, except such as are shown on the certificate
of title and no title to any motor vehicle shall pass
or vest until such transfer be so executed." (Emphasis
ours)

The above provision of the Certificate of Title Act clearly
indicates that it is the intention of the Legislature that all sub-
sequent sales after the first sale of a motor vehicle in this State
shall be accomplished by a transfer of the certificate of title on
such motor vehicle, and that no title to any motor vehicle shall pass
or vest until such transfer be so executed. Section 53 of the Act
clearly establishes this intention by providing that all sales made
in violation of this Act shall be void and no title shall pass until
the provisions of this act have been complied with. In the case of
Giles v. Lehman (Civ. App.) 163 S.W. (2d) 720, the Court said:

"Where no certificate of title was issued to buyers
of automobile, the sale was void because of failure to
comply with Certificate of Title Act, and seller could
not enforce note and chattel mortgage executed by buyer."

Section 36 of the Certificate of Title Act provides as follows:

"The Department shall refuse issuance of a certifi-
cate of title, or having issued a certificate of title,
suspend or revoke the same, upon any of the following
grounds:
"(a) That the application contains any false or
fraudulent statement, or that the applicant has failed
to furnish required information requested by the Depart-
ment, or that the applicant is not entitled to the
issuance of a certificate of title under this Act."
(Emphasis ours)

It is therefore the opinion of this department that it is the
duty of the Certificate of Title Division to refuse the issuance of a
certificate of title under the factual situation outlined in your
question until or unless information has been furnished to the depart-
ment showing a continuous record chain of title to the automobile in
question from its first sale in this State to and including the de-
ceased person. While we realize that the Certificate of Title Divi-
sion has wide discretionary powers in administering the provisions of
the Certificate of Title Act, and that in some cases it may be
difficult for surviving heirs to trace all former owners of a motor

Hon. D. C. Greer - Page 6

vehicle, we believe that in order to effectuate the stated purposes of the Act as above outlined it is necessary that a continuous record chain of title to and including the applicant for a certificate of title appear in the records of your department before you would be authorized to issue a certificate of title to such applicant. Under the provisions of the Act and the holdings of the courts of this State, the legal title to a motor vehicle rests in the last bona fide holder of a certificate of title on such vehicle, and in order to get such legal title out of such holder there must be a transfer of such vehicle by the method of assignment of the certificate of title, and until such has been accomplished and the record thereof appears in the files of your department showing an unbroken chain of title to the applicant, you would not be justified in issuing a new certificate of title to an applicant therefor.

Question 3. "Would we be correct in following the above outlined procedure in cases where we have an outstanding title in the name of someone other than the deceased person, or should we request a proper assignment of title to any and all subsequent owners until title to the motor vehicle is brought up to the deceased person?"

We believe that our discussion and answer to your question No. 2 above adequately answers your question No. 3; and it is therefore our opinion that under the factual situation outlined in such question that before you would be justified in issuing a certificate of title to the applicant therefor, there must be a continuous chain of title of record in your department to the motor vehicle in question evidenced by proper assignment of the certificate of title from all subsequent owners to and including the deceased person.

Question 4. "In many cases where there has been no administration a car is the only property involved and there are also minor heirs to same. The value of the motor vehicle does not justify probating the estate. We have provided an affidavit form to be executed by a surviving spouse when they are selling the motor vehicle to pay community debts and all minor heirs are listed in same, but is there any way we can issue title in the name of a surviving spouse where there are minor heirs involved without administration proceedings or without qualification as guardian of the minors? What is required in a similar case, where there are minor heirs involved and the motor vehicle is sold but not for the purpose of paying community debts?"

Hon. D. O. Greer - Page 7

Articles 3663 through 3680 of the Revised Civil Statutes of Texas, determine the rights of a community survivor with reference to community property in this State. In referring to such statutes the Supreme Court of Texas in Fidelity Union Insurance Company vs. Hutchins, 133 S. W. (2) 106, stated as follows:

"We think that it goes without saying that the rights, powers and liabilities of a qualified community survivor are fixed and determined by pertinent statutes. Without qualifying under any statutes the surviving spouse may sell the community property to pay community debts."

Again in the case of Knight, et al, vs. Tannehill Brothers (Civ. App.) 140 S. W. (2) 552, the Court has the following to say:

"A survivor of a community has authority to sell and convey property of the community in order to adjust and discharge community debts without going through the formal process of perfecting community administration and giving required bond."

In the case of Grobe vs. First State Bank of Bishop (Sup. Court, 1941) 150 S. W. (2) 64, the Supreme Court of Texas, in discussing the rights of a community survivor to handle community property and dispose of same for the purpose of paying community debts, has the following to say:

"The survivor in community is authorized, without qualifying under any statute, to sell and convey community property for payment of community debts, since community property descends subject to debts of community estate."

In the case of Grobe vs. First State Bank of Bishop, supra, the Supreme Court, in discussing the right of community survivor to deal with community property where there are no community debts, has the following to say:

"Where assets of community estate are in cash, there are no debts unpaid, there has been no administration of the estate, and there is no necessity for any, then upon death of either husband or wife, community estate vests one-half in survivor and the other half in

Hon. D. C. Greer - Page 8

children, and under such circumstances survivor is not
entitled to sell or convey community assets."

It would therefore appear that the matters presented by
your fourth question have been definitely decided by the courts of
this State in the cases above cited, and you are therefore advised
that if the surviving spouse makes an affidavit, under the facts you
present, that the motor vehicle is being sold to pay community debts,
you would be authorized to issue the certificate of title even though
there were minor children. There are three methods provided by sta-
tute through which the survivor can take possession of the community
estate: (1) By taking out administration under Title 54, Article
3290, et seq., Revised Civil Statutes, 1925; (2) By qualifying as
survivor in community under Chapter 27, Title 54, Article 3661, et
seq., Revised Civil Statutes; and (3) By being appointed guardian
of the estate of the minor under Title 69, Article 4102, et seq.,
Revised Civil Statutes, 1925. Grebe vs. First State Bank of Bishop,
supra. If the sale of the motor vehicle by the surviving spouse is
not being made to pay a community debt and there are minor children,
it will be necessary for your department to be furnished evidence
that the surviving spouse has qualified under one of the above methods
in order to convey the title of the minor children. Upon being fur-
nished with this evidence, you would then be authorized to issue cer-
tificate of title to the purchaser from the surviving spouse. When
the surviving spouse has qualified under either of the methods above
and has posted the proper bond required by the respective statutes,
title to the motor vehicle would pass to the purchaser from such sur-
viving spouse even though the funds derived from the sale were dissi-
pated by the community survivor. In such event, the children could
look to the bond and not to the purchaser of the automobile. See
Fidelity Union Insurance Company vs. Hutchins, supra, and McFarland
vs. Beaton, 126 S. W. 2nd 719, affirmed in 134 S. W. 2nd 1058.

While the above rules are general and are based on a gen-
eral statement of facts which might be altered by special facts in a
particular case, we believe that to properly carry out and effectuate
the purposes of the Act as stated in Section 1 thereof above quoted,
dictates the use of the procedure hereinabove set out under the
factual situations presented, and any applicant aggrieved by such
procedure is adequately protected by Section 39 of the Act providing
for appeal from the refusal of the department to issue the certifi-
cate of title requested.

Hon. D. C. Greer - Page 9

        We trust that the foregoing sufficiently answers the questions which you have presented.

                                        Yours very truly

                                        ATTORNEY GENERAL OF TEXAS

APPROVED NOV __, 1946

ATTORNEY GENERAL OF TEXAS

                                        By Douglas E. Bergman
                                           Assistant

DEB:djm

APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN